IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

RISE, INC. and RISE LEGACY
DEVELOPMENT LLC,
                          Plaintiffs,

      v.

MALHEUR COUNTY and MALHEUR
COUNTY PLANNING COMMISSION,

                        Defendants.

Case No. 2:10-CV-00686-SU

OPINION AND ORDER

SULLIVAN, Magistrate Judge:

      Rise, Inc. and Rise Legacy Development, LLC (collectively "Rise") filed this action against Malheur County and the Malheur County Planning Commission (collectively "the County") alleging violations of the federal Fair Housing Act, as modified by the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  The parties filed cross motions for summary judgment; this Court denied Rise's motion and granted, in part, and denied, in part, the County's motion.[1]  Pursuant to 28 U.S.C. §

---

[1] Findings and Recommendation (docket # 98) adopted by Opinion and Order (docket # 108).

1292(b), Rise moves to interlocutorily appeal two issues regarding this Court's summary judgment order: 1) the County's requirement that Rise obtain a conditional use permit ("CUP") to operate a residential home for people with disabilities; and 2) the County's refusal to consider Rise's request for reasonable accommodation in violation of the FHAA and ADA. For the reasons set forth below, Rise's motion to certify these issues for interlocutory appeal is denied.[2]

## FACTUAL BACKGROUND

Rise, Inc. is a non-profit corporation offering support services for the developmentally disabled, including the operation of residential group homes for people with disabilities. *Rise, Inc. v. Malheur Cnty.*, 2012 WL 1085501, *1 (D.Or. Feb. 13), *adopted by* 2012 WL 1079808 (D.Or. Mar. 30, 2012). Rise Legacy Development is the corporation that owns the properties on which Rise, Inc. operates its facilities. *Id.* In March 2008, Rise Legacy Development purchased a residential home located in Malheur County, Oregon, for the purposes of having Rise, Inc. open a residential facility for developmentally disabled adults. *Id.* On June 25, 2008, after investing a substantial amount of time and money, Rise was notified by the County that a CUP was required to operate a residential home in an exclusive farm use ("EFU") zone. *Id.*

Thereafter, Rise representative Mindi Mitchell began researching the zoning requirements for the property. *Id.* at *2. At the same time, Mitchell consulted an attorney, Kathleen Wilde with the Oregon Advocacy Center, about the FHAA. *Id.* Rise ultimately hired attorney Christ Troupis to represent them in obtaining a CUP. *Id.* On July 2, 2009, Mr. Troupis, on behalf of Rise, submitted an official application for a CUP to the Malheur County Planning Department. *Id.* at *3.

---

[2] The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636.

Mr. Troupis cited Or. Rev. Stat. § 443.400(5)-(10) and Or. Rev. Stat. §197.663 in support of Rise's application and emphasized the need for such group homes to provide quality care for the disabled. *Id.*

The application stipulated that Rise's facilities met Malheur County Code § 6–6–8–1 and included deeds to the property dating back to 1993. *Id.* The application also suggested proposed conditions that would apply should the CUP be granted, such as excluding certain individuals from placement in the home, including convicted felons and sex offenders. *Id.* Further, Mr. Troupis submitted a document entitled "Memorandum Re: Legal Issues Pertinent to CUP Application for Group Residential Home," which outlined the relevant law about discrimination on the basis of disability under the FHAA. *Id.*

On July 23, 2009, the Malheur County Planning Commission ("the Commission") held a hearing on Rise's CUP application, at which a number of county residents spoke in opposition to the opening of the residential home, a petition signed by individuals opposed to the application was submitted, and letters from the Malheur County Sheriff and Malheur County District Attorney were read into the record. *Id.* At the close of testimony, the Commission asked for more information from Rise, including a site plan showing fencing of the property, a traffic analysis, and a review by the Local Public Safety Coordinating Council regarding compatibility with farming. *Id.* The hearing was thus continued pending the submission of the additional information. *Id.*

On August 5, 2009, Mr. Troupis submitted an amended application for a CUP, in which Rise asserted that it would be "farming" the property. *Id.* at *4. Therefore, Rise asked the Planning Commission for a determination that a CUP was no longer required. *Id.* Mr. Troupis acknowledged that a traffic study had not been undertaken, despite the Commission's request, because Rise

believed that it would provide no useful information. *Id.* Finally, the amended application addressed some of the concerns expressed by citizens at the July hearing but focused primarily on the need for the residential facility in Malheur County and the value of Rise's services. *Id.*

The Commission held a further hearing on September 24, 2009, when additional statements were made by county residents and letters were submitted in opposition to the opening of Rise's residential home. *Id.* At the close of the hearing, Commission members openly deliberated on the CUP application; based on its incompatibility with area farm uses and traffic patterns, the Commission unanimously voted to deny the application. *Id.* Accordingly, on October 22, 2009, the Commission published its written Findings of Fact, Conclusions, and Decision ("the Decision"), denying Rise's application for a CUP. *Id.* Specifically, the Commission denied the application because it did "not meet all of the applicable approval criteria for a conditional use of a residential group home in an [EFU] zone." The Decision additionally referred to the potential interruption of neighboring farm practices and to the insufficiency of the evidence submitted by Rise. *Id.*

After the denial of their CUP, Rise filed a notice of appeal to the Commission and sought the assistance of a land use attorney. After a title search and review of Oregon statutes and the Malheur County Ordinance, Rise determined that the home they purchased had been a single family dwelling without accompanying farm use prior to the enactment of Oregon's land use laws creating the EFU zone. *Id.* Rise therefore concluded that a CUP was not a prerequisite to operating a residential group homes for people with disabilities. *Id.*

Thus, on March 5, 2010, Rise submitted a memorandum to the County in support of their position that a CUP was not required. *Id.* at *5. The County responded to Rise's memorandum but did not acknowledge that a CUP was not essential to operating a residential facility. *Id.* On May

Page 4 - OPINION AND ORDER

5, 2010, Rise withdrew its appeal and announced their intention to open and operate the residential

home without a CUP. *Id.* On April 1, 2011, Rise opened the residential home in Malheur County.

*Id.* The County indicated that it has no intention to shut down Rise's operation. *Id.*

On June 15, 2010, Rise filed this action; one month later, Rise filed a motion for summary

judgment, asking this Court to enter a declaratory judgment that the County's actions violated the

FHAA and ADA. *Id.* Rise also sought damages as a result of the County's alleged violations of the

FHAA and ADA. *Id.* The County cross-moved for summary judgment. *Id.* at *1.

This Court denied Rise's motion in its entirety. *Id.* at *14. The Court found that Rise's

declaratory judgment claim was moot and granted the County's motion as to this claim. *Id.* at *6-7.

In addition, this Court granted the County's motion, in part, as to the damages claim, finding that

the County did not intentionally discriminate against Rise by telling Rise to apply for a CUP.[3] *Id.*

at *9-10. The Court also granted the County's motion, in part, as to the damages claim because Rise

failed to demonstrate that the County refused to make a requested accommodation. *Id.* at *13-14.

## STANDARD OF REVIEW

Section 1292(b) establishes three criteria that must be met before the court can issue an order

certifying an interlocutory appeal: 1) "a controlling question of law" must be present; 2) there must

be a "substantial ground for difference of opinion" as to the controlling question of law; and 3) "an

immediate appeal from the order may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982),

---

[3] This Court denied the parties' cross-motions for summary judgment in regard to the
intentional discrimination claim arising out of the County's decision to deny Rise's CUP. *Rise*,
2012 WL 1085501 at *10-13. Rise does not seek interlocutory review of this issue and, as such,
the Court will not address it further. As a result, outstanding issues remain before this Court.

*aff'd*, 459 U.S. 1190 (1983).

The party seeking the interlocutory appeal bears the burden of establishing that "all three § 1292(b) requirements are met." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Section 1292(b) is "a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). Further, even where all three statutory conditions are met, district courts enjoy "unfettered discretion" to deny certification. *Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, *3 (D.Or. Feb. 13, 2008) (citations and internal quotations omitted). Indeed, certifications under 29 U.S.C. § 1292(b) are reserved for "extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). As such, section 1292(b) certification is not "intended merely to provide review of difficult rulings in hard cases." *Id.*

## DISCUSSION

Rise contends that this Court's order denying their summary judgment motion and granting, in part, the County's motion is appropriate for interlocutory appeal.

### I.  Controlling Question of Law

Rise asserts that "both issues [of which they are seeking interlocutory appeal] involve a controlling question of law." Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 2. A "question of law" is controlling when "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement*, 673 F.2d at 1026. Moreover, in this context, a "question of law" refers to a "pure question of law" and not a mixed question of law and fact or the application of law to facts. *Barrer v. Chase Bank, USA*, 2011 WL 1979718, *4 (D.Or. May 18,

2011); *see also Shoenborn v. Stryker Corp.*, 2011 WL 5881647, *2 (D.Or. Nov. 21, 2011).

    A.  Intentional Discrimination Claim

Rise argues that a controlling question of law exists regarding the County's decision to require a CUP because the FHAA requires that a residential home for people with disabilities must "be treated in the same manner as a single family dwelling."  Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 5-6.

As a preliminary matter, the Court notes Rise is merely reasserting their substantive arguments regarding the FHAA instead of providing a basis for interlocutory appeal.  Thus, Rise has not raised a legal question, but merely challenges this Court's application of law to the facts of this case.  "[I]f the Court were to accept [this] argument, any 'application of facts to the law' would then be subject to certification."  *Shoenborn*, 2011 WL 5881647 at *1 (citations and internal quotations omitted).  This, however, is insufficient to meet the requirements of section 1292(b).  Rather, because only pure questions of law qualify for certification, Rise has failed to demonstrate that the circumstances of this case are appropriate for interlocutory appeal.

Regardless, even accepting Rise's argument that a pure question of law exists, an order certifying this issue for interlocutory appeal would nonetheless be improper.  Rise portrays the issue on appeal as "whether Oregon law insulates [the County] from a claim for facial, intentional discrimination under federal law."  Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 6.  As such, Rise mischaracterizes this Court's basis for its prior ruling.

This Court granted the County's motion for summary judgment because the record revealed that Rise applied for a CUP based on their own extensive research and upon advice from their legal counsel.  *Rise*, 2012 WL 1085501 at *9-10.  Rise did not submit a CUP application because of the

Page 7 - OPINION AND ORDER

County's requirement, but rather because they independently determined that one was necessary in order to operate their home. *Id.* Thus, the issue of whether Oregon law provides protection against claims for intentional discrimination under federal law is not implicated here. Therefore, for this additional reason, Rise cannot demonstrate that a "controlling question of law" exists as to their intentional discrimination claim.

B.  Reasonable Accommodation Claim

Rise also contends that a controlling question of law remains regarding which types of statements are sufficient to qualify as a request for reasonable accommodation. *See* Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 3. Specifically, Rise argues that the comments made by their attorney, Mr. Troupis, constituted a specific request for a reasonable accommodation. *Id.* at 3-4. Accordingly, Rise is once again merely reasserting their substantive arguments rather than providing an adequate basis for interlocutory appeal. *See*, *e.g.*, *Rise*, 2012 WL 1085501 at *13 ("Rise argues that the statement presented [by Mr. Troupis at the July 2009] hearing was sufficient to constitute a request for a reasonable accommodation"). As discussed above, Rise's disagreement with the disposition of this issue pursuant to the parties' cross-motions for summary judgment is insufficient to establish that a "controlling question of law" exists.

Further, the reasonable accommodation claim failed not because of any controlling legal issue, but because the evidence that Rise submitted in support of its claim was inadequate. It is undisputed that the only evidence in the record regarding Rise's request was a summary of FHAA case law, including the statutory language requiring reasonable accommodations, that they provided to the County at the July 2009 hearing. *Id.*; *see also* Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 3-4. Thus, this Court found that the County was unable to provide a reasonable

Page 8 - OPINION AND ORDER

accommodation because Rise never indicated that one was necessary. *Rise*, 2012 WL 1085501 at *13.

A controlling question of law is therefore not implicated. Rather, the County's motion for summary judgment was granted due to Rise's failure to carry their burden of proof, as there was "no evidence . . . in the record [that] Rise requested a reasonable accommodation at the time it decided to apply for a [CUP]." *Id.* Accordingly, the determination of what constitutes a sufficient request for reasonable accommodation on interlocutory appeal would not materially affect the outcome of this litigation, as Rise's evidence would still be inadequate. Therefore, Rise has not demonstrated that the first element of section 1292(b) was met as to the reasonable accommodation claim.

## II.  Substantial Ground for Difference of Opinion

Rise also failed to adequately demonstrate the second requirement of section 1292(b). "To determine if a 'substantial ground for difference of opinion' exists, courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633 (citation omitted). Generally, a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (citations and internal quotations omitted).

Regardless, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (citations and internal quotations omitted). Further, a "party's strong disagreement with the [c]ourt's ruling is not sufficient for there to be a 'substantial ground for difference' "; in addition, that "settled law might

Page 9 - OPINION AND ORDER

be applied differently does not establish a substantial ground for difference of opinion." *Id.* (citations and internal quotations omitted).

### A.  Intentional Discrimination Claim

Rise contends that the County's decision to require a CUP "constitutes a substantial ground for difference of opinion." Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 6.  Rise, however, does not provide any analysis or cite to any authority in support of this blanket assertion; notably, they do not invoke any of the bases for a substantial ground for difference of opinion outlined in *Couch*, 611 F.3d at 633.  *Id.* at 5-6.

Nonetheless, the standard governing intentional discrimination claims under the ADA and FHAA is well-settled.  *See*, *e.g.*, *Gamble v. City of Escondido*, 104 F.3d 300, 305-06 (9th Cir. 1997); *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n.3 (9th Cir.), *cert. denied*, 540 U.S. 1075 (2003). The parties agreed that these were the relevant legal standards for intentional discrimination claims throughout this litigation; further, this is precisely the standard that the Court applied in this case. *See Rise*, 2012 WL 1085501 at *8-9.

The mere fact that Rise disagrees with the Court's disposition of this claim based on the application of these standards to the undisputed facts is inadequate to establish a substantial ground for difference of opinion.  *See Schoenborn*, 2011 WL 5881647 at *2.  Therefore, Rise has not demonstrated that the circumstances of this case warrant certification for interlocutory appeal.

### B.  Reasonable Accommodation Claim

Rise contends that "there is no controlling Ninth Circuit precedent as to the standard by which to determine what is sufficient to state a request for reasonable accommodation in the context of a zoning decision."  Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 3-4.  As such, Rise argues

that a substantial ground for difference of opinion exists as to their reasonable accommodation claim. *Id.*

However, Ninth Circuit precedent is also well-settled as to reasonable accommodation claims pursuant to the ADA and FHAA. *See, e.g., DuBois v. Ass'n of Apartment Owners of 2987 Kalakau*, 453 F.3d 1175, 1179 (9th Cir. 2006); *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003); *see also Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999).

Despite this precedent, Rise is essentially attempting to phrase the issue presented in this case very narrowly, such that it falls outside the purview of established Ninth Circuit law. Pls.' Mem. in Supp. of Mot. Interlocutory Appeal 3-4. Rise argues that, because this Circuit has not addressed this issue specifically in regard to a zoning decision, all that is required to trigger a reasonable accommodation is knowledge of disability. *Id.* In support of this contention, Rise cites to a number of cases from outside the Ninth Circuit. *Id.*

Rise nonetheless acknowledges that, in 2004, the U.S. Department of Housing and Urban Development ("HUD") issued a joint position paper with the U.S. Department of Justice on the FHAA. *Id.* HUD's interpretations command "considerable deference in interpreting the [FHAA]." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citing *Plaff v. HUD*, 88 F.3d 739, 747 (9th Cir. 1996)). In their paper, HUD spoke to the exact issue of what constitutes a sufficient request for reasonable accommodation in the context of housing: "[u]nder the [FHAA], a resident . . . makes a reasonable accommodation request whenever she makes clear to the housing provider [orally or, preferably, in writing] that she is requesting an exception, change, or adjustment to a rule, policy, practice, or service because of her disability. She should explain what type of accommodation she is requesting." Reasonable Accommodation Requirement Under the Fair Housing Act 10 (U.S.

Page 11 - OPINION AND ORDER

Dep't of Hous. & Urban Dev. May 17, 2004), *available at* http://www.hud.gov/offices/fheo/library/huddojstatement.pdf.

Thus, even if, as Rise argues, there is no case law from the Ninth Circuit that is directly on point, a substantial ground for difference of opinion does not exist; HUD's position paper clearly outlines the specific form a reasonable accommodation request must take, which it is undisputed that Rise did not provide in this case. Accordingly, the fact that this Court may be the first in the District of Oregon to rule on this issue is irrelevant. *Couch*, 611 F.3d at 633. Further, the fact that other circuits or district courts may apply this standard differently to similar claims does not constitute a basis for interlocutory certification. *Id.* Therefore, Rise failed to establish that a substantial ground for difference of opinion was present as to their reasonable accommodation claim.

III.  Immediate Appeal May Materially Advance the Ultimate Termination of Litigation

Because Rise failed to establish section 1292(b)'s first and second requirements, this Court declines to address the third element. Accordingly, Rise's motion is denied.

**CONCLUSION**

For the foregoing reasons, Rise's Motion for an Order Certifying Two Issues for Interlocutory Appeal (docket # 109) is DENIED.

IT IS SO ORDERED.

DATED this 25th day of May, 2012.


/s/ Patricia Sullivan

Patricia Sullivan
United States Magistrate Judge


Page 12 - OPINION AND ORDER